IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KAREN LEE COATS,         )
                               )
             Plaintiff,     )
                               )
                v.         )      1:17CV658
                               )
NANCY A. BERRYHILL,    )
Acting Commissioner of Social Security,  )
                               )
            Defendant.    )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Karen Lee Coats ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

## I.    PROCEDURAL HISTORY

Plaintiff filed her application for DIB on February 26, 2013, alleging a disability onset date of November 2, 2011. (Tr. at 21, 203-04.)[1] Her claim was denied initially (Tr. at 93-108, 131-39), and that determination was upheld on reconsideration (Tr. at 109-25, 141-48). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 149-50.) Plaintiff attended the subsequent video hearing on April

---

[1] Transcript citations refer to the Administrative Record [Doc. #5].

20, 2016, along with her attorney and an impartial vocational expert. (Tr. at 21.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 34), and, on May 16, 2017, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

## II.    LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff engaged in "substantial gainful activity" between November 2, 2011 and April 24, 2012. However, the ALJ further found that "there has been a continuous 12-month period during which [Plaintiff] did not engage in substantial gainful activity. (Tr. at 23.) Plaintiff therefore met her burden at step one of the sequential evaluation process, and the relevant period was the period from April 24, 2012 through the date of the decision. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> bilateral carpal tunnel syndrome, status post left carpal tunnel release, status post De Quervain's tenosynovitis release, status post left lateral epicondylitis release, osteoarthritis of the left wrist, osteoarthritis of the left thumb, osteoarthritis of the right foot, status post bilateral inguinal hernia repair, thyroid disorder, hypertension, temporomandibular joint (TMJ) dysfunction, obesity, depression, anxiety, and insomnia.

(Tr. at 23-24.)  The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing.  (Tr. at 24.)  Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following additional limitations:

> She can sit for about 6 hours in an 8-hour work day; she can stand and/or walk for about 6 hours total in an 8-hour workday; she can occasionally push and/or pull with both upper extremities and the right lower extremity[;] she is right hand dominant; she can frequently climb ramps and stairs, [but] never ladders, ropes or scaffolds; she can frequently balance; she cannot work in jobs that will require the continuous use of her hands and she can frequently perform handling and fingering in that she can frequently grasp, twist, turn, hold, raise and lower objects, [and] pick, pinch or perform hand-to-finger repetitive action with both hands; she must avoid concentrated exposure to hazards, such as machinery, heights, etc.; she can understand and perform simple and 1-3 step detailed instructions and tasks; she can maintain concentration, persistence, and pace for 2 hours at a time over an 8-hour workday; she can interact occasionally with others, including co-workers, supervisors, and the general public; and she can adapt to infrequent changes in the workplace.

 (Tr. at 25.)  The ALJ found at step four that Plaintiff's past relevant work exceeded her RFC.  (Tr. at 33.)  However, at step five of the sequential analysis, the ALJ determined that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs that exist in significant numbers in the national economy.  (Tr. at 33-34.)  Therefore, the ALJ concluded that Plaintiff was not disabled under the Act.  (Tr. at 34.)

Plaintiff now challenges the ALJ's RFC assessment.  Specifically, she contends that the ALJ erred in evaluating Plaintiff's symptoms and credibility with respect to Plaintiff's "capacity to frequently lift 10 pounds; occasionally push and pull with both upper extremities; and frequently perform handling and fingering," particularly in light of the medical opinion evidence.  (Pl. Br. [Doc. #10] at 5.)  Plaintiff also contends that the ALJ erred by failing to

"consider the effect of [Plaintiff's] psychological condition on her subjective experience of pain." (Pl. Br. at 14.) After a careful review of the record, the Court finds that none of Plaintiff's contentions merit remand.

## A.    Symptom Evaluation

Plaintiff first contends that substantial evidence fails to support the ALJ's evaluation of the limiting effects of Plaintiff's symptoms. Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16–3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16–3p"); see also 20 C.F.R. § 404.1529.[4] In Craig v. Chater, the Fourth Circuit addressed the two-part test for evaluating a claimant's statements about symptoms. Craig, 76 F.3d at 594–95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. § 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about her pain, in order

---

[4] Social Security Ruling 16-3p eliminated use of the term "credibility" in reference to symptom evaluation, effective March 28, 2016. The Social Security Administration has clarified that Social Security Administration adjudicators "will apply this ruling when we make determinations and decisions on or after March 28, 2016" and that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." Soc. Sec. Ruling 16-3p, 2017 WL 510304, at *1, 13 n.27 (Oct. 25, 2017). Because the ALJ's decision in this case was issued on June 2, 2016, after March 28, 2016, Social Security Ruling 16-3p applies to it.

to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595.

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. §§ 404.1529(c)(3):

> (i) [Plaintiff's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
>
> (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

In the present case, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's

"statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 26.) Therefore, Plaintiff's challenge hinges on step two of the Craig analysis.

It is undisputed that at step two of the analysis, the ALJ should not reject a claimant's statements "about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on objective medical findings." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017). However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Thus, objective medical evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work" and "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595); see also SSR 16–3p ("[O]bjective medical evidence is

a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities.").  According to the regulatory guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities. . . .  In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities.

SSR 16–3p.

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered objective medical evidence and other evidence, and explained that determination in the decision.  In evaluating the evidence, the ALJ specifically identified at least seven reasons supporting her determination.  First, the ALJ noted "the record shows that [Plaintiff] continued to work without restriction until she underwent surgery in April 2012 and although they did not resolve, the record show her symptoms steadily improved shortly thereafter."  (Tr. at 28.)  Second, the ALJ noted that "the record does not document any electrodiagnostic testing of the claimant's left upper extremity since the surgical releases in April 2012 and the electrodiagnostic testing conducted on her right upper extremity in July 2012 simply revealed a 'mild degree' of right carpal tunnel syndrome."  (Tr. at 28.)  Third, "the record shows x-rays of [Plaintiff's] left thumb were within normal limits in May 2014 and a nuclear medicine bone scan of her hands and wrists was also within normal limits in September 2014."  (Tr. at 29.).  Fourth, the ALJ noted that "the record documents some

evidence suggesting the claimant did not return to work after her surgeries in April 2012, at least partly, due to reasons unrelated to disability, particularly since she was already worried about layoffs and contemplating retirement." (Tr. at 29.) Fifth, the ALJ noted that while the record documented some ongoing complaints of pain and numbness in her upper extremities, "the severity and intensity of the claimant's subjective complaints involving her upper extremities are just no consistent with the physical examination findings found throughout the record." (Tr. at 29 (with extensive citations to and quotes from the medical record).)[5] Sixth, the ALJ found that "[m]aybe most telling, the record shows [Plaintiff was not undergoing any regular medical treatment as of December 2013 and the only corresponding pain medication she was taking as of December 2014 were over-the-counter nonsteroidal anti-inflammatory drugs." (Tr. at 29.) Finally, the ALJ noted that "the record shows [Plaintiff] engaging in various activities after April 24, 2012 that are not consistent with those of an individual suffering from such alleged incapacitating symptoms. . . . In fact, the record shows [Plaintiff] performing yard work in May 2014 and she had recently gone on vacation with friends to the beach in June 2015. . . . Not to mention, [Plaintiff] further testified at the hearing that she

---

[5] Plaintiff argues that the ALJ's statement regarding the "severity and intensity" of her subjective complaints impermissibly conflicts with her finding at step one of <u>Craig</u>, because it is "equivalent to saying that the objective medical evidence did *not* support a finding that Coats' impairment are '*reasonably likely*' to cause the pain alleged, in the amount and degree alleged." (Pl.'s Br. at 18.) However, the analysis at step two properly considers the intensity of Plaintiff's symptoms based on the entire record, including the objective evidence. <u>See</u> 20 C.F.R. §§ 404.1529(c)(4); <u>see also</u> SSR 16–3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities."). In this case, the "the severity and intensity of [Plaintiff's] subjective complaints" cited by the ALJ clearly refers to the functionally-limiting effects of Plaintiff's pain and other subjective symptoms. As such, they fall under step two of <u>Craig</u>. In making that determination, the ALJ was entitled—and indeed, required—to consider whether Plaintiff's subjective complaints were "consistent with the physical examination findings" and the record as a whole. Here, the ALJ determined, and explained at length, that they were not. This finding included comprehensive analysis of the objective medical evidence, which included diagnostic testing within normal limits and examinations revealing a full range of motion in all joints, full grip strength, and intact motor function. (Tr. at 27-29.)

prepares meals, performs household chores, drives, shops in stores, attends church, gardens, and cares for her ailing father and his girlfriend." (Tr. at 30.) All of these findings are well supported by the record, with specific quotations and citations in the ALJ's decision.

Ultimately, the ALJ made a determination regarding Plaintiff's symptoms after considering Plaintiff's testimony and the applicable factors at length. The ALJ's discussion clearly takes into account Plaintiff's "medical history, medical signs, and laboratory findings" as well as the factors set out in 20 C.F.R. §§ 404.1529(c)(3), such as the extent of Plaintiff's treatments and her daily activities. Plaintiff has not shown how this symptom evaluation was improper or how the ALJ's determination was unsupported by substantial evidence. In fact, Plaintiff relies almost entirely on alleged errors in the ALJ's weighing of the opinion evidence, considered below.

B.      Opinion Evidence

Plaintiff contends that, in finding that Plaintiff has the capacity to frequently lift 10 pounds, occasionally push and pull with both upper extremities, and frequently perform handling and fingering, the ALJ improperly weighed the medical opinion evidence. Specifically, the ALJ gave greatest weight to an evaluation by Dr. Richard DellaPorta, gave partial weight to an opinion of Dr. Steven Hausmann, gave great weight to the state agency consultant Dr. Virgili, and gave little weight to the opinions of Drs. Amanda Hagen, Helen Mantila, and Richard Miller. Plaintiff contends that the ALJ erred in weighing the opinion evidence. (Pl.'s Br. at 5-13.) However, as discussed below, the ALJ sufficiently explained the weight given to each opinion, with substantial support in the record.

1. Dr. Hausmann

On August 14, 2012, Dr. Hausmann, an orthopedic surgeon, performed a one-time consultative evaluation of Plaintiff as part of a Workers' Compensation claim. (Tr. at 445.) He posited that Plaintiff could return to work immediately with the following restrictions: "no lifting with the left hand in excess of 5 pounds"; "avoidance of repetitive flexion/extension movements with the left wrist," although "[s]he could do fine fingering with the left wrist and manipulate fine objects"; and avoidance of repetitive pushing and pulling. (Tr. at 450.) Dr. Hausmann found Plaintiff's right upper extremity to be less limited, allowing her "to lift as much as 20 pounds." However, he recommended that she avoid "repetitive flexion and extension . . . due to insipient mild carpal tunnel syndrome." (Id.)[6]

The ALJ assigned Dr. Hausmann's opinions "partial weight . . . because they appear to be somewhat vague and internally inconsistent." (Tr. at 31.) The ALJ then highlighted two alleged inconsistencies, relating that

> Dr. Hausmann recommended [Plaintiff] perform "no lifting with the left hand in excess of 5 pounds", yet he also opined [Plaintiff] could "lift as much as 20 pounds" with the right upper extremity. Likewise, Dr. Hausmann advised "avoidance of repetitive flexion/extension movement with the left wrist" but opined [that Plaintiff] "could do fine fingering with the left wrist and manipulate fine objects."

(Id.) Plaintiff contends that the ALJ erred in finding any internal inconsistencies on this basis. (Pl.'s Br. at 6-7.) However, the ALJ's decision reflects that to the extent there is any inconsistency in Dr. Hausmann's statements that Plaintiff should avoid "repetitive

---

[6] Dr. Hausmann also opined that Plaintiff's mild carpal tunnel syndrome in her right wrist was not work related. (Tr. at 449.) In a supplemental opinion issued in November 2012, Dr. Hausmann noted that he had reviewed additional records but did not see anything that would cause him to change his opinion as to the causal relationship. (Tr. at 461.)

flexion/extension movements with the left wrist" but "could do fine fingering with the left wrist and manipulate fine objects," the ALJ gave weight to the latter opinion. (Tr. at 31, 450.) Similarly, where Dr. Hausmann's opinion could be viewed as inconsistent to the extent he opined that "[w]ith the right extremity I would allow her to lift as much as 20 pounds or as much as 5-10 pounds," the ALJ gave weight to the former. (Tr. at 31, 450.) Moreover, the ALJ relied on more than internal inconsistencies in weighing the opinion, noting, for example, that "portions of Dr. Hausmann's medical opinion appear to be heavily based upon [Plaintiff's] subjective self-reports and complaints of symptoms rather than objective medical findings." (Tr. at 31.) Dr. Hausmann specifically noted that, although Plaintiff "remains fairly markedly symptomatic on [her left] side, . . . [o]ne would have expected her to recover at this point and b[e] able to return to full work duty." (Tr. at 450.) He also noted her "fairly normal clinical examination except for a positive Tinel's test." (Tr. at 31, 450.) In fact, as the ALJ recounted at length, Plaintiff's exams after her April 2012 surgery consistently revealed full motor and sensory function, full strength, and full range of motion in all joints. (See Tr. at 29.) Thus, substantial evidence supports the ALJ's assertion that "portions of Dr. Hausmann's medical opinion appear to be heavily based upon [Plaintiff's] subjective self-reports and complaints of symptoms rather than objective medical findings." (Tr. at 31.) Significantly, despite assigning Dr. Hausmann's opinions only partial weight, the ALJ nevertheless adopted "the upper range of the collective limitations opined by Dr. Hausmann" when formulating the RFC. (Tr. at 31.) These included restrictions to light lifting, occasional pushing and pulling, and frequent handling and fingering. (See Tr. at 25.) For all of the above reasons, the Court finds no error in the weighing of Dr. Hausmann's opinion.

2.    Dr. DellaPorta

In considering the opinion evidence, the ALJ assigned the "greatest weight" to Dr. DellaPorta's December 23, 2013 medical opinion, which the ALJ found "well supported by objective medical findings" and "reasonably and accurately reflect[ive of] the longitudinal record." (Tr. at 31.)  As set out by the ALJ, Dr. DellaPorta found Plaintiff's impairments "'consistent with a schedule loss of use of 10% of the right hand . . . [and] a total of 24% of the left arm.'" (Tr. at 31) (quoting Tr. at 805).  Plaintiff now contends that the ALJ erred by failing to expressly consider Dr. DellaPorta's opinion that Plaintiff has a 15% schedule loss of use of the left hand due to carpal tunnel syndrome.  (Pl.'s Br. at 12) (citing Tr. at 805).  However, Dr. DellaPorta's opinion clearly explains that the 24% loss of use of the left arm encompasses the 15% hand loss in question:

> I feel [Plaintiff] has findings consistent with a schedule loss of 10% of the left arm due to the left elbow lateral epicondylitis, 15% of the left hand due to the carpal tunnel syndrome which is equal to 11.7% of an arm, and 10% of the left thumb due to the left DeQuervain's tendinitis which is equal to 2.4% of an arm[,] giving a total of 24% of the left arm.

(Tr. at 805.)  In other words, Dr. DellaPorta translated Plaintiff's 15% left hand loss into 11.7% of an arm, which, added to the 10% and 2.4% from Plaintiff's other left arm impairments, equaled 24.1% total loss of arm use.

Although Plaintiff further argues that the ALJ failed to translate Dr. DellaPorta's findings into "'SSA-speak,' and account for [them] in the RFC and hypothetical" (Pl.'s Br. at 12), both Dr. DellaPorta's opinion and the ALJ's decision belie this assertion.  In particular, Dr. DellaPorta fully reviewed the prior treatment notes and opinions of Dr. Hagan and Dr. Miller, along with other records, but found, based on electrodiagnostic studies and Plaintiff's

lack of ongoing treatment, that Plaintiff's impairments merited a lower schedule loss than Dr.

Miller opined the previous year.  (Tr. at 804-05.)

The ALJ then also gave great weight to the opinion of the State agency medical

consultant, Dr. Virgili, in setting the RFC limitation.  (Tr. at 30, 119-21.)  Plaintiff neither

challenges the assignment of "great weight" to the State agency opinion nor alleges that it

conflicts with Dr. DellaPorta's opinion.

### 3.    Dr. Miller

Plaintiff nevertheless contends that the ALJ erred by giving only little weight to the

opinion of Dr. Miller.  Dr. Miller, an orthopedic surgeon, issued medical opinions on both

August 2, 2012 and July 12, 2013.[7]  Dr. Miller's 2012 opinion is a notation in a treatment note

---

[7] With respect to Dr. Miller, Plaintiff also makes a brief reference to the "treating physician rule" in effect at the time.  See 20 C.F.R. §§ 404.1527(c); Brown v. Comm'r Soc. Sec., 873 F.3d 251, 255 (4th Cir. 2017).  Under these regulations, the ALJ generally accords the greatest weight—controlling weight—to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2).  However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight.  20 C.F.R. § 404.1527(c)(2); see also to Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; Brown, 873 F.3d at 256; Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.  Moreover, even if an opinion by a treating physician is given controlling weight with respect to the nature and severity of a claimant's impairment, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone.  20 C.F.R. § 404.1527(d). Where an ALJ declines to "give controlling weight to a treating source opinion, he must "give good reasons in [his] ... decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted).  In this case, the ALJ considered Dr. Miller's treatment records, but concluded that his opinions were not well supported and were inconsistent with other substantial evidence in the record, and ultimately were entitled to little weight, for the

reflecting that Plaintiff was making "slow but steady progress with her rehab" following the surgery, and that "[s]he is 100% disabled. Note that she works inspecting on an assembly line, this does involve constant, repetitive tasks, and although our goal is [to] return her to that work, this may prove difficult." (Tr. at 410.) The ALJ gave little weight to Dr. Miller's 2012 opinion that Plaintiff was "still 100% disabled" as of that date, explaining that it was "a conclusory opinion on an issue expressly reserved to the Commissioner." (Tr. at 32) (citing Tr. at 410); see 20 C.F.R. § 404.1527(d). In the circumstances, the ALJ did not err in concluding that this was a conclusory opinion on an issue reserved to the Commissioner, and therefore assigning this opinion little weight.

In Dr. Miller's 2013 opinion, rendered at Plaintiff's request as part of her workers' compensation claim, Dr. Miller posited that Plaintiff "could do nothing more than the lightest of activities which [do] not involve constant repetitive tasks, 75% impairment." (Tr. at 32, 371.) The ALJ ultimately assigned this additional opinion little weight as well, noting that "the total disability rating he assessed [for Plaintiff's] left upper extremity seems far too restrictive given the totality of the objective medical evidence and appears to be more heavily based upon [Plaintiff's] subjective complaints of symptoms." (Tr. at 32.) In fact, Dr. Miller's assessment further explained that "[i]t is unclear as to why [Plaintiff] has not had a better symptomatic response, but I am really not able to provide an in-depth assessment of the problem given the fact that we are seeing her for just the first time in a year, last seen 3 months following the surgery on the left side." (Tr. at 370-71.) In terms of clinical findings, Dr. Miller's

reasons discussed above. As discussed above, the ALJ included specific reasons for that determination, supported by substantial evidence in the record.

examination revealed that Plaintiff had full range of motion in all joints, intact motor function, and "no swelling or visible signs of synovitis [or] tenosynovitis." (Tr. at 370.) The only positive findings were "some tenderness" in her wrist and elbow. (Id.) In short, Dr. Miller's own notes, accompanying his opinion, support the ALJ's finding that his opinion is based largely, if not entirely, on Plaintiff's subjective complaints.[8]

### 4. Dr. Hagan

Plaintiff next challenges the ALJ's assignment of "little weight" to the opinion rendered by Dr. Hagan. (See Tr. at 31-32.) In appears that Dr. Hagan treated Plaintiff prior to the surgery in April 2012, when care was referred to Dr. Miller. (Tr. at 806.) Several months later, on September 13, 2012, Dr. Hagan issued an opinion related to Plaintiff's worker's compensation claim reflecting 50% temporary impairment (Tr. at 464) with a "good" prognosis and with work restrictions of: "[n]o lifting greater than 5 pounds with either arm," "limit[ed] repetitive flexion of the left elbow," and "limit[ed] repetitive motions of both wrists." (Tr. at 807.) Dr. Hagan also referred Plaintiff to a hand specialist at that time "for evaluation of her right wrist carpal tunnel syndrome." (Id.) In discounting this opinion, the ALJ explained that it was "not supported by the objective medical evidence" and was "wholly inconsistent with the record as a whole." (Tr. at 31.) The ALJ further noted that the "extremely restrictive exertional limitations" posited by Dr. Hagan "appear to be far too

---

[8] The state agency consultant, Dr. Virgili, also considered and discounted Dr. Miller's opinion, finding that "[t]he opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." (Tr. at 122.) Dr. Virgili further noted that "[d]espite an ongoing treating relationship [with Dr. Miller], visits for treatment have been too infrequent or too sporadic to obtain a longitudinal picture of the individual's impairment-related limitations and restrictions" and "[t]he opinion is without substantial support for other evidence of record, which renders it less persuasive." (Tr. at 122.)

heavily based upon [Plaintiff's] self-reports and complaints of symptoms rather than medical findings." (Id.) Indeed, it appears that the focus of Dr. Hagan's examination in September 2012 was Plaintiff's right wrist and whether the symptoms in her right wrist were work-related, and the opinion primarily recounts Plaintiff's subjective complaints. (Tr. at 806.) As noted by the ALJ, nothing in Dr. Hagan's notes supports the extensive limitations she posits. In addition, the ALJ further noted that this opinion was "wholly inconsistent with the longitudinal record" including Plaintiff's reported activities such as gardening and yard work in 2013 and 2014, further addressed by the ALJ throughout the opinion. (Tr. at 31, 28-30.) This analysis provides a specific basis, supported by substantial evidence in the record, supporting the ALJ's determination.

### 5. Dr. Mantila

Dr. Mantila issued her opinion nearly two years later, on July 8, 2014.[9] Dr. Mantila's records reflect that Plaintiff repeatedly asked her to complete disability "forms", but Dr. Mantila refused, noting that her clinic did not undertake evaluations for disability claims. (Tr. at 559, 562, 566, 569, 571.) Dr. Mantila ultimately agreed to provide a "letter with patient symptoms." (Tr. at 562.) The letter reflects that Plaintiff had been coming to the clinic for "routine care," but that Plaintiff would be referred to a local orthopedic specialist for consultation and to evaluate her disability claims. (Tr. at 480.) The letter further states that pain in Plaintiff's hands "prevent[s] her from returning to work. She is unable to bear more than 5 lbs. of weight without pain." (Tr. at 480.) Dr. Mantila also noted that "[r]epetitive

---

[9] The ALJ erroneously stated that Dr. Mantila issued her opinion in July 2013. (Tr. at 31.) However, this error has no impact on the ALJ's analysis.

motion exacerbate[s Plaintiff's] pain." (Id.) As with Dr. Hagan, the ALJ found that this opinion was "not supported by the objective medical evidence," was "wholly inconsistent with the record as a whole," and was "far too heavily based upon [Plaintiff's] self-reports and complaints of symptoms rather than medical findings." (Tr. at 31.) Indeed, Dr. Mantila's own notes reflect that the letter is simply intended as a description of Plaintiff's complaints, and is not intended to be an evaluation for purposes of a disability claim. Moreover, Dr. Mantila's treatment notes do not reflect the extensive restrictions proposed, as noted by the ALJ. (Tr. at 561, 577, 580-81.) In the circumstances, the ALJ's decision to give little weight to Dr. Mantila's opinion is supported by substantial evidence.

6. Opinions as part of Symptom Evaluation

Ultimately, the Court finds that the ALJ fully addressed and analyzed the opinion evidence, and for reasons set out clearly in the decision, gave greatest weight to Dr. DellaPorta's opinion, gave great weight to State agency consultant Dr. Virgili, and gave partial weight to Dr. Hausmann's evaluation, ultimately adopting an RFC consistent with those opinions. Conversely, the ALJ gave little weight to the opinions of Dr. Miller, Dr. Hagen, and Dr. Matila, for reasons supported by substantial evidence, as noted above. In making this determination, the ALJ also specifically relied upon Plaintiff's reported daily activities in July 2013, May 2014, and in her hearing testimony, which reflected her ability to perform yardwork and "all the household chores," including laundry, dusting, and vacuuming. (Tr. at 31-32.) The ALJ found such work "inconsistent with an individual incapable of lifting more than 5 pounds." (Tr. at 32.) As noted above, the ALJ also recounted Plaintiff's substantial gap in treatment, minimal medication use, and overwhelmingly normal objective findings, including

consistently full strength, as part of the overall evaluation of Plaintiff's symptoms, which was well supported by substantial evidence, as set out above.

To the extent that Plaintiff essentially asks the Court to re-weigh the evidence and come to a different conclusion than the ALJ, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [the claimant] is disabled," but rather, "whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained his decision, and supported that explanation with substantial evidence.

Accordingly, the Court finds no basis for remand.

C.     Effect of Mental Impairments in Symptom Evaluation

Plaintiff next contends that the ALJ refused to consider the effect of Plaintiff's psychological condition on her subjective experience of pain.     Plaintiff contends that "it is probable that her pain had a psychological component," and that the ALJ erred by failing to expressly consider the impact of her mental impairments on her subjective pain. (Pl.'s Br. at 15, 14.) This contention is similarly unpersuasive. In making this argument, Plaintiff assigns special significance to statements from an orthopedic evaluation by Dr. Ian Archibald in December 2014, who opined as follows:

The patient did have a significant amount of subjective complaints with limited objective findings. As already noted, I believe a component of this patient's condition is unrelated to her orthopedic diagnoses. As I am not a psychiatrist or psychologist, I am unable to comment further on what those conditions might be.

(Tr. at 640.)[10] Based on these statements, Plaintiff asserts that the implication of Dr. Archibald's statements is "direct and clear," i.e., that Plaintiff's pain was, in part, psychological. (Pl.'s Br. at 14.) She therefore argues that the ALJ was required to take this basis for Plaintiff's pain into consideration along with the objective evidence of her physical limitations.

Plaintiff's argument ignores the requirement that the ALJ take more than the potential *source* of a claimant's pain into account when assessing her symptoms. Here, the ALJ made a positive finding at step one of <u>Craig</u>, acknowledging that her impairments, including depression and anxiety along with myriad physical conditions, "could reasonably be expected to cause the alleged symptoms," including pain. (Tr. at 26.) In contrast, at step two of <u>Craig</u>, 76 F.3d at 595, the ALJ was required to consider Plaintiff's "medical history, medical signs, and laboratory findings," as well as the factors in 20 C.F.R. § 404.1529(c)(3), to determine the extent to which it affects Plaintiff's ability to work, <u>see</u> 20 C.F.R. § 404.1529(c)(1).

In the present case, as recounted above, the ALJ found that Plaintiff's treatment records, objective testing, opinion evidence, medication use and efficacy, and activities of daily living simply failed to support the degree of functional limitation she alleged from her impairments. (Tr. at 27-33.) Notably, at the outset of the analysis, the ALJ specifically addressed Plaintiff's mental health complaints. The ALJ found that "the record certainly does

---

[10] The ALJ gave little weight to Dr. Archibald's opinion because it was based on Plaintiff's subjective self-reports and complaints, and because Dr. Archibald himself noted that his own examination of Plaintiff failed to reveal objective findings consistent with Plaintiff's subjective complaints. (Tr. at 32.) Plaintiff does not challenge that determination.

not document any ongoing objective clinical manifestations of any significant mental pathology, let alone any that would have been expected to produce more than minimal ongoing functional limitation for a period of 12 consecutive months." (Tr. at 26.) In support of this finding, the ALJ quoted numerous "normal" mental findings in the record and explained that Plaintiff's diagnoses, including depression and anxiety, along with her moderate Global Assessment of Functioning ("GAF) scores, appear to be "heavily based upon [Plaintiff's] subjective self-reports and complaints of symptoms rather than objective medical findings." (Tr. at 26-27.)[11] Moreover, the ALJ explained that "many of [Plaintiff's] reported depressive and anxiety-related symptoms actually appeared to be understandable acute emotional reactions to situational stressors rather than signs of any chronic mental pathology." (Tr. at 27.) These stressors included marital conflict, work and financial stress, her son's attempted suicide, legal issues, and her husband's and father's health issues along with her own. (Id.) Nevertheless, the ALJ also noted that Plaintiff's mental symptoms were "well controlled with medication and outpatient treatment." (Id.) In fact, as the ALJ recounted in her decision, all of the mental health opinions in this case, including a psychological consultant and both State Agency psychologists, found that Plaintiff had no significant functional limitations due to her alleged mental impairments. (Tr. at 102, 117, 478.) However, the ALJ ultimately gave Plaintiff the benefit of the doubt and included mental limitations in her RFC assessment based on her subjective testimony at the hearing. (Tr. at 30.) While Plaintiff correctly asserts that an ALJ has a duty to assess the effects of a claimant's impairments in

---

[11] The ALJ's discussion includes citations to Plaintiff's therapy notes, which include an appointment in December 2014, shortly after Dr. Archibald's evaluation. (Tr. at 690.)

combination, the ALJ in this case clearly explained that the record evidence is inconsistent with Plaintiff's allegations of disabling pain, regardless of whether the source of such pain was physical, mental, or a combination of the two. For example, the ALJ noted that, despite Plaintiff's reports of debilitating pain, "the record shows that [she] was not undergoing any regular medical treatment as of December 2013[,] and the only corresponding pain medication she was taking as of December 2014 were over-the counter nonsteroidal anti-inflammatory drugs," namely Aleve and aspirin, from which she alleged no side effects. (Tr. at 29, 640.) Perhaps most significantly, the ALJ then recounted Plaintiff's extensive activities of daily living, including traveling, gardening, cooking, household chores, shopping, attending church, and taking care of her elderly father and his girlfriend. (Tr. at 30.) The ALJ found that these activities "are not consistent with those of an individual suffering from . . . incapacitating symptoms." (Id.) In light of the above findings, the Court finds that substantial evidence supports the ALJ's determination. As such, the Court again finds no basis for remand.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #9] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #12] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 27th day of August, 2018.

_____/s/ Joi Elizabeth Peake_____
United States Magistrate Judge
